JERALD COX v. GEORGE WINKLEPLECK.

[No. 471A85. Filed August 3, 1971.]

*Dean H. Neeriemer,* of Washington, for appellant.

*Alvin Seal, Seal & Seal,* of Washington, for appellee.

SULLIVAN, P.J.—This is an appeal from a judgment entered upon a verdict following trial to a jury wherein plaintiff-appellant sought to recover damages for pain and suffering, medical expenses and loss of earnings allegedly sustained by him as a result of personal injuries suffered in an automobile collision November 7, 1969. The motor vehicle operated by defendant struck the rear end of a vehicle operated by one Delbert Vowell. The Vowell vehicle was thereby propelled into the rear end of the vehicle occupied by plaintiff at a time when the Vowell vehicle was stopped and the vehicle in which plaintiff was a passenger was stopped or nearly

stopped while awaiting entrance into a guarded government installation. The jury returned a verdict for plaintiff in the sum of $500 and judgment was entered thereon.

The first issue presented is whether plaintiff's Motion to Correct Error should have been sustained upon the ground that the verdict was for a sum less than the actual pecuniary loss sustained by plaintiff as demonstrated by the uncontroverted evidence.

Upon trial below, the parties stipulated that plaintiff had incurred medical expense in the sum of $113.90. Further, the evidence in the form of plaintiff's testimony was undisputed that plaintiff was gainfully employed as an ordnance worker earning $3.03 per hour for a standard eight-hour day five days per week. Both plaintiff and his physician testified that plaintiff was disabled for a period of four weeks or at least twenty days as a direct result of the November 7 collision. The latter evidence was likewise not directly disputed.

Notwithstanding the failure of appellant's brief to advance his contention with persuasiveness or with supportive authority, we deem the issue sufficiently delineated so as to require disposition upon the merits. See *Fairwood Bluffs Conservancy District v. Imel* (1970), 146 Ind. App. 352, 255 N. E. 2d 674.

Appellee-defendant's sole response to plaintiff's contention concerning inadequacy of damages is that plaintiff was annually entitled to 13 days' sick leave and 20 days' vacation, both with compensation, and that therefore the 20 days which plaintiff lost from his employment did not necessarily represent lost wages. Such response wholly ignores the collateral source rule. As noted in *Jackson v. Beard* (1970), 146 Ind. App. 382, 255 N. E. 2d 837, 843, the rule in Indiana is as follows:

" 'Compensation for the loss received by plaintiff from a collateral source, independent of the wrongdoer, as from [an employment contract], cannot be set up by the wrongdoer in mitigation of damages.' "

Thus while it is true that Indiana follows the collateral source rule, appellant cannot here benefit from its application for the reason that no objection was made to evidence of the collateral source, i.e., sick leave and vacation pay, nor does appellant indicate that instructions concerning such compensation, if given, were objected to, nor does appellant argue application of the rule in his brief. The jury, without admonishment to ignore evidence of income from the collateral source or instructions to that effect requested by plaintiff, was within its prerogative to consider such evidence. If error was committed by the jury in considering collateral income, appellant has waived such error. *Dale* v. *Trent* (1970), 146 Ind. App. 412, 256 N. E. 2d 402 (failure to object to evidence) ; *Lyons* v. *Greene, Admr.* (1964), 136 Ind. App. 419, 202 N. E. 2d 172 (failure to argue issue in brief).

Without regard to the collateral source rule, however, appellant nevertheless fails in his contention that damages for lost wages were inadequate. Based upon the circumstances surrounding the collision in question, together with the nature and extent of the injury complained of, it was within the prerogative of the jury to determine that the undisputed period of time during which plaintiff was absent from work or a portion thereof was not the proximate result of the automobile collision. *Niemeyer* v. *Lee* (1969), 144 Ind. App. 161, 245 N. E. 2d 178. Cases referred to by plaintiff-appellant, *Henschen* v. *New York Cent. R. Co.* (1945), 223 Ind. 393, 60 N. E. 2d 738, *Green* v. *Oakley* (1969), 145 Ind. App. 307, 250 N. E. 2d 594, *Stinson* v. *Mettert* (1967), 141 Ind. App. 354, 228 N. E. 2d 43, *Schutz* v. *Rose* (1964), 136 Ind. App. 165, 196 N. E. 2d 285, are distinguishable and clearly inapplicable here.

Notwithstanding plaintiff's testimony and the testimony of his physician, uncontroverted to the effect that plaintiff's loss of work for four weeks was directly attributable to the injury sustained in the collision of November 7, 1969, and notwithstanding that there was no direct evidence to indicate that

such absence was otherwise caused, the jury might have nevertheless reasonably concluded that plaintiff's injury was not so severe as to cause the entire four-week loss even though some lost time may have been sustained as a result of such injury. Evidence in support of the jury's conclusion in this regard was to the effect that the impact between defendant's automobile and Vowell's automobile was more severe than the impact between the Vowell automobile and that occupied by plaintiff, coupled with the fact that Vowell lost only three working days as opposed to twenty days claimed by plaintiff.

The jury viewed the demeanor of plaintiff as he testified and under Indiana law was the sole judge of his credibility. We cannot say as a matter of law that the jury was required to believe the uncontroverted testimony of plaintiff concerning lost wages insofar as such loss may or may not have been attributable to the automobile collision in question. *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Pohlman* v. *Perry* (1952), 122 Ind. App. 222, 103 N. E. 2d 911; *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 78 N. E. 2d 449.

As to the additional elements of damage alleged by plaintiff, suffice it to say that the jury is not required to award substantial monetary damages for pain and suffering. Nominal damages are appropriate under proper circumstances. *American Fletcher Nat. Bank & Trust Co.* v. *Flick* (1969), 146 Ind. App. 122, 252 N. E. 2d 839. The jury also could have properly disregarded as wholly speculative any loss of overtime compensation claimed by plaintiff. *No. Ind. Steel Sup. Co., Inc.* v. *Chrisman* (1965), 139 Ind. App. 27, 204 N. E. 2d 668; *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 133 N. E. 512.

In a somewhat related argument, appellant contends that in questioning him about a previous conviction for possession of a dangerous drug, defendant's counsel erroneously and prejudicially injected the fact that the specific drug involved was LSD. Plaintiff contends that such fact was an improper

element for consideration by the jury and clearly created a motivation of prejudice, passion and partiality, causing the jury to arrive at the "inadequate" verdict.

While the effect which unlawful possession of a dangerous drug, even LSD, may have upon credibility may perhaps be questioned, we nevertheless acknowledge the longstanding fiction that conviction of *any* crime, whether felony or misdemeanor, reflects adversely upon the witness' truthfulness and veracity, and while we deem it absurd to permit an inference of disreputable character, untruthfulness or proclivity toward perjury from proof of any guilty plea or conviction, the existing law decrees that a jury may properly consider such immaterialities and irrelevancies if in the broad and virtually irreversible discretion of the trial court the crime tends even remotely to bear upon credibility. *Way* v. *State* (1946), 224 Ind. 280, 66 N. E. 2d 608; *Fritch* v. *State* (1927) 199 Ind. 89, 155 N. E. 257; *Ashton* v. *Anderson* (1971), 265 N. E. 2d 719 (pending upon Petition to Transfer); *McMullen* v. *Cannon* (1958), 129 Ind. App. 11, 150 N. E. 2d 765. Compare *Robinson* v. *State* (1925), 197 Ind. 148, 149 N. E. 888.

We now express the hope that the highest court of this state will reconsider the posture of the law in this regard and that in the future evidence of prior convictions for impeachment purposes will be limited to those crimes which clearly bear upon the credibility of the witness or at least to crimes clearly involving moral turpitude. After all, angels,[1] bishops,[2] kings,[3] and even judges[4] upon rare occasions, are subject to

---

1. "How art thou fallen from heaven, O Lucifer, son of the morning!" Isaiah 14:12.

2. "Give me chastity and continence, but not just now." Confessions of St. Augustine, Book 8, Chapter 7.

3. "If Henry III had been capable of being sued, he would have passed his life as a defendant. In the opinion of many of his subjects, he was forever breaking the law." 1 Pollock and Maitland (1895) History of English Law, page 501.

4. In 1621, philosopher, scientist and Lord Chancellor Francis Bacon, the highest judicial officer of England, was impeached for accepting bribes from litigants—sometimes from both parties to the controversy.

human frailties and commensurate with such characteristics have been and might be convicted of transgressions against established law. One's credibility might well be destroyed were he to quarrel on Sunday, IC 1971 35-1-86-1, being Ind. Ann. Stat., § 10-4301 (Burns 1956), ride a horse within the city, IC 1971 35-1-119-2, being Ind. Ann. Stat., § 10-2702 (Burns 1956), or gather cranberries on public lands, IC 1971 35-27-3-1, being Ind. Ann. Stat., § 10-4508 (Burns 1956).

Notwithstanding the reservations we have expressed concerning this facet of "impeaching" evidence, we are bound by existing law. We therefore hold that it was not reversible error for the court to permit inquiry of plaintiff relative to his guilty plea to possession of a specific dangerous drug. The fact that the specific drug was mentioned is no more prejudicial than the permissible generic reference which was made.

Judgment affirmed.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 737.

His only defense was that he never gave the briber value in return unless he deserved it upon the merits. Impeachment of Federal Judges: An Historical Overview. Thompson and Pollitt. 49 N. C. L. Rev. 87 (1970).