Juanita BURNETT, Administratrix of
the Estate of Robert C. Burnett,
Deceased, Appellant,

v.

STATE of Indiana, Appellee.

No. 884S331.

Supreme Court of Indiana.

Aug. 27, 1984.

W. Scott Montross, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Richard Potter, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Juanita Burnett, as administratrix of the estate of her husband, Robert C. Burnett, brought suit in Marion County Circuit Court against the State of Indiana for the wrongful death of her husband. The suit arose out of an automobile collision at the intersection of State Road 26 and Creasey Lane in Tippecanoe County which resulted in Robert's death. Juanita claimed that the State negligently failed to warn the motoring public of a change in the traffic control light at the intersection. The case was tried in Hancock County Circuit Court. The jury returned a verdict in favor of Juanita, awarding her $6000 in damages, and the trial judge entered judgment on the verdict. Juanita filed a motion to correct errors asserting that the damages awarded her were inadequate. The motion was denied and Juanita appealed to the Court of

Appeals. Finding that the damages awarded were inadequate if the State was indeed liable, but unable to determine if the jury considered some improper element or compromised in reaching its verdict, the Court of Appeals reversed the judgment of the trial court and ordered a new trial on all issues. The State petitions this Court for transfer. We grant transfer.

 The issue before us is whether there was error in the jury's assessment of damages. We have said that in a wrongful death case we will reverse for inadequate damages only where it is apparent that the amount of damages assessed by the jury is so small as to indicate that in awarding the amount the jury was motivated by prejudice, passion, partiality or corruption, or considered some improper element. *Henschen v. New York Central R. Co.*, (1945) 223 Ind. 393, 60 N.E.2d 738. *See also, Faulk v. Chandler*, (1980) Ind.App., 408 N.E.2d 584; *Green v. Oakley*, (1969) 145 Ind.App. 307, 250 N.E.2d 594. Indiana Code § 34-1-1-2 provides in part that:

"[w]hen the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter ... and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral, and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission."

The plaintiff bears the burden of proving the amount of damages caused by the wrongful act of the defendant. *Southern Indiana Gas and Electric Co. v. Indiana Insurance Co.*, (1978) 178 Ind.App. 505, 383 N.E.2d 387; *Daly v. Nau*, (1975) 167 Ind.App. 541, 339 N.E.2d 71, *trans. denied.*

 To support her claim for damages here, Juanita presented evidence of medical and burial expenses totalling $4262.00. She also testified on direct examination that her husband earned $21,644.23 in 1974, $21,312.00 in 1975, $21,571.88 in 1976, $22,-035.80 in 1977 and $27,151.35 in 1978 from his employment with Wickes Building Com-

pany as a pole building salesman. She produced no income tax returns or records to support these amounts, however, and acknowledged on cross-examination that at least some of these figures might include income earned by her. When questioned about Robert's income from January 1, 1979 until his death on June 16, 1979 she stated, "It seems I remember a figure of $10,000.00, something." Upon further cross-examination she was unable to estimate the amount of Robert's earnings that went for her support and while conceding that some of his earnings went to pay his business expenses, did not state by how much his income was reduced thereby. While she testified vaguely that she might be required to hire help to do work around the house that Robert had previously done, she further revealed she had not yet found it necessary to do so.

Larry Scherzinger, Robert's employer, was also called as a witness on behalf of Juanita. He acquiesced in the income figures recited by Juanita but produced no records of any kind to substantiate the earnings claims. He stated that Robert was compensated solely on a commission basis. He further testified that, based on his projections, Robert would have been earning $42,000 annually at the time of trial had he been alive, but also admitted that the building economy was generally "down" at that time. A mortality table was also introduced by Juanita at trial to show the life expectancy of a man Robert's age at the time he was killed.

In her motion to correct errors and on appeal, Juanita claimed that the $6000 verdict returned by the jury after hearing and considering this evidence was without legal basis and was grossly inadequate. We do not agree that there was error in the jury's assessment of damages.

 We regard this jury verdict as consistent with the proof of damages sustained by Juanita and with the element of risk to which parties are legitimately and fairly subjected upon trial. As plaintiff, Juanita bore the burden of providing the jury with the necessary tools to rationally

assess the damages she suffered. *See, Southern Indiana Gas and Electric Co. v. Indiana Insurance Co., supra,* 178 Ind. App. at 519–20, 383 N.E.2d at 396–97. The jury must move by the use of deductive reasoning, guided by the court's instructions and the argument of counsel, from the facts it deems to have been proved through varied intermediate inferences and calculations to a final dollar value. The presentation of evidence at trial is an art. Practical, legal, and artistic elements are involved when deciding which matter should be formally presented and which can be left to final jury argument or to the good sense of the jury. Those decisions affect the probability that a desired verdict will be reached. In the case at bar, for the purpose of providing a basis for a jury assessment of lost earnings, plaintiff introduced income figures, but did not satisfy the jury's need to know how to translate those amounts into an approximation of the actual monetary loss she suffered by reason of Robert's death. She did not indicate, for example, by how much these figures should be reduced to account for Robert's personal and business expenses. With exception of the medical and burial costs, the evidence of the amount of loss she suffered is not specific. The evidence strongly suggests a loss of greater magnitude than the amount awarded in the verdict. But there is little to show the actual extent of that loss. This surely hindered the jury in reasoning through intermediate inferences and calculations to a specific dollar award of a greater amount, one which would be fair to the defendant as well as the plaintiff. Juanita failed to carry her burden.

Juanita also presented no evidence, and nothing in the record indicates, that the jury's verdict was prompted by prejudice, passion or partiality or that the jury considered some improper element. *See, Faulk v. Chandler, supra.* Furthermore, the trial judge refused to supplant the judgment of the jury when he denied Juanita's motion to correct errors. We cannot say that the jury erred in determining the damage award in light of the evidence be-

fore them. The State's petition to transfer is granted, the memorandum decision of the Court of Appeals is vacated and the judgment of the trial court is affirmed.

GIVAN, C.J., HUNTER, PRENTICE and PIVARNIK, JJ., concur.